# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| LARRY STEPHENS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )      1:04CV00221 |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Larry Stephens seeks judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner's final decision denying his claim for Disability Insurance Benefits. The Commissioner's denial decision became final on January 23, 2004, when the Appeals Council found no basis for review of the hearing decision of the Administrative Law Judge ("ALJ"). In this action, the parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

### The Claimant

Plaintiff was born on May 16, 1945, and was 56 years of age on his alleged onset date of disability. He has less than a high school education. Plaintiff's past relevant work is as a welder and the owner of a pressure washing business. Plaintiff alleges disability as of July 2, 2001, due to headaches, stroke, dizziness, and muscle spasms in his legs and feet.

## The Administrative Proceedings

Plaintiff filed an application for benefits on August 24, 2001, alleging disability due to headaches, stroke, dizziness, and muscle spasms in his legs and feet. The claims were denied initially and on reconsideration, and Plaintiff filed a request for a hearing. A hearing was held in Greensboro, North Carolina, on August 20, 2002, before ALJ Joyce Harrison Smith, and a decision denying benefits was issued on December 18, 2002. Plaintiff filed a request for review, and on January 23, 2004, the Appeals Council found no basis for review of the ALJ's decision. Plaintiff then filed this request for judicial review in a timely manner.

The findings of the ALJ relevant to this review include the following:

1. Plaintiff met the nondisability requirements for a period of disability and Disability Insurance Benefits on July 2, 2001, his alleged onset date of disability, and continued to meet them through at least December 18, 2002, the date of the ALJ's decision.

2. Plaintiff has not engaged in substantial gainful activity since July 2, 2001, his alleged onset date of disability.

3-4. Plaintiff suffers from "severe" chronic pancreatitis due to chronic alcoholism,[1] vertigo, migraine headaches, and a history of mini-strokes, but does not have an impairment, or combination of impairments, that meets or equals one listed in Appendix 1, Subpart P, Regulations Number 4.

---

[1] See fn3, *infra.*

5.      Plaintiff's allegations concerning his limitations are not totally credible.

6-7.    Considering all of the medical opinions in the record regarding the severity of Plaintiff's impairments, Plaintiff retains the residual functional capacity to perform medium work activity that does not require exposure to heights, hazards, or dangerous moving machinery.

8.      Plaintiff is unable to perform his past relevant work as a welder or as the owner of a pressure washing business.

9-11.   Plaintiff is an individual of advanced age with a limited education, and no transferable skills.

12.     Plaintiff retains the residual functional capacity to perform a significant range of medium work.

13.     Although Plaintiff is unable to perform a full range of medium work, using Medical-Vocational Rule 203.12 as a framework for decision-making, Plaintiff can perform a significant number of jobs in the national economy.[2]

14.     Plaintiff was not under a "disability," as defined by the Social Security Act, at any time through December 18, 2002, the date of the ALJ's decision.

---

[2] Although she did not state so in summary of findings, the ALJ also relied on the testimony of the Vocational Expert ("VE") in finding that there are a significant number of jobs in the national economy which Plaintiff can perform. (Tr. at 26.)

## The Scope of Review

The scope of judicial review by this Court of the Commissioner's decision denying benefits is limited. *Frady v. Harris*, 646 F.2d 143, 144 (4th Cir. 1981). The Court must review the entire record to determine whether the Commissioner has applied the correct legal standards and whether the Commissioner's findings are supported by substantial evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Where this is so, the Commissioner's findings are conclusive. The Court may not reweigh conflicting evidence that is substantial in nature and may not try the case *de novo*. *Id.* Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted), or "evidence which . . . consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted).

## Discussion

In making a decision on Plaintiff's claim, the ALJ followed a five-step analysis set out in the Commissioner's regulations. 20 C.F.R. § 409.1520 (2004). Under the regulations, the ALJ is to consider whether a claimant (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. The burden of persuasion is on the claimant through the fourth step. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). If the claimant reaches the fifth step, the burden

shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education and work experience. *Id.*

In this case, the ALJ found at step one of the sequential evaluation that Plaintiff has not engaged in substantial gainful activity since July 2, 2001, his alleged onset date of disability. Proceeding to steps two and three, the ALJ found that Plaintiff suffered from "severe" chronic pancreatitis due to chronic alcoholism, vertigo, migraine headaches, and a history of mini-strokes, but he did not have an impairment, or combination of impairments, that met or equaled the ones listed in Appendix 1, Subpart P, Regulations Number 4. At step four, the ALJ found that Plaintiff retained the capacity to perform medium work with a limitation of no exposure to heights, hazards, or dangerous moving machinery. Thus, the ALJ found that Plaintiff did not retain the residual functional capacity to return to his past relevant work as a welder or as the owner of a pressure washing business. Finally, at step five of the sequential evaluation, the ALJ found that Plaintiff is an individual of advanced age with a limited education and no transferable skills. Accordingly, the ALJ found that, considering the testimony of a VE, and using Medical-Vocational Rules 203.12 as a framework for decision-making, Plaintiff was "not disabled," as defined by the Social Security Act, at any time through December 18, 2002, the date of the ALJ's decision.

In this action for judicial review, Plaintiff argues that the ALJ committed reversible error by not affording controlling weight to the opinion of Dr. David C. Keller, a family practitioner who treated Plaintiff for a variety of ailments beginning in June of 2001.

(Pleading No. 7, Pl.'s Br. Supp. Mot. for J. Rev'g Comm'r, at 3-6.)  In a Medical Source Statement, Dr. Keller opined that Plaintiff's vertigo was "thought to be due to a lacunar infarct which was demonstrated on an MRI scan," and that, "even if [Plaintiff] were to remain completely sober he would still be impaired due to his dizziness and frequent migraine headaches."[3]  (Tr. at 220.)   As to Plaintiff's residual functional capacity, Dr. Keller stated that:

---

[3] The Regulations provide that:
(a) If we find that you are disabled and have medical evidence of your . . . alcoholism, we must determine whether your . . . alcoholism is a contributing factor material to the determination of disability.

(b)(1) The key factor we will examine in determining whether . . . alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using . . . alcohol.

(b)(2) In making this determination, we will evaluate which of your current physical and mental limitations . . . would remain if you stopped using . . . alcohol, and then determine whether any or all of your remaining limitations would be disabling.

20 C.F.R. § 404.1535 (2004).

Furthermore, the ALJ must :

> [D]istinguish between substance abuse contributing to the disability and the disability remaining after the claimant stopped using . . . alcohol. The two are not mutually exclusive. Just because substance abuse contributes to a disability does not mean that when the substance abuse ends, the disability will too.

*Sousa v. Callahan,* 143 F.3d 1240, 1245 (9th Cir.1998)(emphasis omitted). *See also Carter v. Apfel,* No. Civ.A. 5:97-0600, 2001 WL 40795, *10 (S.D.W.Va. Jan. 17, 2001).

> [Plaintiff's] main impairment is his vertigo, which would limit his ability to work with any type of machinery or do any kind of climbing. He would be able to lift up to 30 lb [sic] occasionally but no more than 10 lb [sic] frequently. He would not be able to stand or walk any more than an hour at a time and no more than four hours a day. He might be able to engage in work which allowed him to sit or stand at his option.

*Id.* at 220-21. The ALJ discounted these opinions, stating that they "appear[] to be based on [Plaintiff's] subjective statements rather than supporting medical evidence." *Id.* at 25. Plaintiff contends that this finding is not supported by substantial evidence. The Court agrees.

The Court notes that Plaintiff's counsel cites to the Fourth Circuit's old "treating physician rule," which is no longer the governing standard to be applied in evaluating the opinions of treating physicians. *See Stroup v. Apfel*, No. 96-1722, 2000 WL 216620, *5 (4th Cir. Feb. 24, 2000)(unpublished opinion)(*per curiam*)("The 1991 regulations supersede the 'treating physician rule' from our prior case law."); *Pittman v. Massanari*, 141 F. Supp. 2d 601, 608 (W.D.N.C. 2001)(same); *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996)(same); *Winford v. Chater*, 917 F. Supp. 398, 400 (E.D. Va. 1996)(same). Effective August 1, 1991, the Commissioner promulgated a new regulation governing such opinions. *See* 20 C.F.R. § 404.1527 (2004). This regulation provides, in pertinent part, as follows:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) . . . If we find that a treating source's opinion . . . is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence . . . we will give it controlling weight.

20 C.F.R. § 404.1527(d)(2) (2004). By negative implication, if a treating source's opinion is not supported by medically acceptable clinical and laboratory diagnostic techniques *or* if it is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (emphasis added).

The Court recognizes that some panels of the Fourth Circuit continue to cite the "treating physician rule" as good law. *See, e.g., Thomas v. Comm'r of Soc. Sec.*, No. 01-1544, 2001 WL 1602103, *4 (4th Cir. Dec. 17, 2001)(unpublished opinion)(*per curiam*). However, this Court believes the better-reasoned view is that the 1991 regulatory rule supersedes the former "treating physician rule." *See Stroup*, 2000 WL 216620; *see also Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993)(holding that the 1991 regulations are binding on the courts and supersede the Second Circuit's similar "treating physician rule").

Nevertheless, even under the 1991 regulatory rule discussed above, the Court finds that the ALJ's characterization of Dr. Keller's medical source statement is in error. In her decision, the ALJ states that Dr. Keller's opinion is not supported by objective medical evidence. However, Dr. Keller's letter clearly states that he believes, *based on an MRI*, that Plaintiff's dizziness is caused by a pontine infarction. (Tr. at 220.) The ALJ does not discount this statement by pointing to conflicting medical evidence, or the opinion of a different physician, but appears instead to ignore the MRI in question. In this instance, the ALJ's failure to articulate the weight she assigns to the medical evidence constitutes error.

-8-

Case 1:04-cv-00221-WLO   Document 10   Filed 05/05/05   Page 8 of 10

The Court further concludes that the ALJ compounded her faulty analysis at step four of the sequential evaluation by dismissing Dr. Keller's proposed limitations on Plaintiff's residual functional capacity. As discussed above, the ALJ asked the VE to identify jobs for an individual with the residual functional capacity to perform medium work, so long as such individual was not exposed to heights, hazards, or dangerous machinery. (Tr. at 25.) However, the limitations outlined by Dr. Keller would limit Plaintiff to light work with a sit-stand option. (Tr. at 220-21.) Because Plaintiff is an individual of advanced age, he would be disabled under the Medical-Vocational Rule 202.02, even if he were able to perform a full range of light work. According to Dr. Keller's opinion, Plaintiff has the significant nonexertional limitation of a sit-stand option on a full range of light work.

In her opinion, the ALJ gave no explanation for disregarding Dr. Keller's opinion, except that it was not supported by objective evidence.[4] To the extent Dr. Keller's opinion as to Plaintiff's residual functional capacity is based on his conclusion that Plaintiff's dizziness is caused by the pontine lesion shown on Plaintiff's MRI, the ALJ's conclusion is not supported by substantial evidence.

---

[4] It is impossible to discern from the ALJ's opinion whether she believes that Dr. Keller's opinion as to the cause of Plaintiff's dizziness is not supported by objective medical evidence, or that Dr. Keller's opinion as to Plaintiff's residual functional capacity is not supported by the medical evidence, or both.

## Conclusion

**IT IS THEREFORE RECOMMENDED** that Plaintiff's motion for judgment reversing the decision of the Commissioner [Pleading No. 6] be granted, that the Commissioner's motion for judgment on the pleadings [Pleading No. 8] be denied and that this action be remanded for further proceedings in accordance with this decision. Such proceedings shall include expert medical evidence regarding Plaintiff's strength capabilities.

    /s/ P. Trevor Sharp    
United States Magistrate Judge

Date: May 5, 2005